STETSON, Ex parte. See Case No. 13,390.

---

## Case No. 13,381.

### In re STETSON.

[4 Ben. 147;[1] 3 N. B. R. 726 (Quarto, 179).]

District Court, S. D. New York. May, 1870.

BANKRUPTCY—APPLICATION TO VACATE DISCHARGE —NOTICE—OMISSION OF PROPERTY FROM SCHEDULES.

1. A bankrupt obtained his discharge on February 3d, 1868. On March 28th, 1868, a petition was filed by a creditor to vacate the discharge, on the ground that the creditor had no notice of the filing of the petition, or of the adjudication, till February 3d, 1868, and was not served with notice of the issuing of the warrant, and of the meeting of creditors to prove debts and choose an assignee, and on various grounds of fraudulent omission of prop-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

erty from his schedules. The papers showed that notice of the issuing of the warrant and of the first meeting of creditors was published, and that a like notice was mailed to the creditor; and it appeared that he attended that meeting and afterwards, before the discharge, deposed to a proof of his debt before a register, which proof was, after the discharge, filed in court, but it did not appear whether it was presented to the register in charge of the case: *Held*, that, the notice being duly published and served by mail, if the creditor failed to receive the notice, the regularity of the proceeding would not be thereby affected.

[Cited in brief in Pattison v. Wilbur, 10 R. I. 449.]

2. On the merits, the property in question was not shown to have belonged to the bankrupt, and the petition must be dismissed, with costs.

[In the matter of Charles A. Stetson, a bankrupt.]

W. Watson, for creditor.
T. Burwell, for bankrupt.

BLATCHFORD, District Judge. In this case the bankrupt received his discharge on the 3d of February, 1868. On the 28th of March, 1868, a petition was filed by Calixte Harvier, a creditor of the bankrupt's, praying the court to vacate and annul such discharge. The petition set forth, as grounds for the relief asked: (1) That the creditor had no notice of the filing of the bankrupt's petition, or of his adjudication, until the 3d of February, 1868, and was not served with a notice that a warrant had been issued, and that a meeting of creditors would be held to prove their debts and choose an assignee, as required by section 11 of the act [of 1867 (14 Stat. 521)]; (2) that the bankrupt, in his petition and schedules, wilfully omitted to mention the profits of the Astor House, since 1860, in the hands of John E. Develin, but held by him in trust for the bankrupt, and a house at Lynn, Massachusetts, the title of which was in the wife of the bankrupt, but which belonged to him and was purchased with his money; (3) that the bankrupt was guilty of fraud and negligence, in that he did not deliver to his assignee property which belonged to him at the time he presented his petition and inventory, namely the said profits and the said house; (4) that, with intent to defraud his creditors, he admitted, in the proceedings in bankruptcy, three false and fictitious debts in favor of the said Develin, against his, the bankrupt's estate, and, knowing that such debts had been proved, and that the same were false and fictitious, did not declare the same to his assignee within one month after such knowledge; (5) that, after the passage of the bankruptcy act, he made to the said Develin a fraudulent transfer of the profits arising out of the Astor House, contrary to the provisions of the bankruptcy act. The petition alleges, that the creditor had no knowledge of these things, until after the discharge, and no opportunity, if they had come to his knowledge, of availing himself thereof, in opposing the

discharge, by reason of such want of notice. The creditor contends, that the bankrupt was, at all times after the year 1860, the proprietor of the Astor House and really a partner with the said Develin, and was the head and principal of the establishment, and it was carried on by his ability, experience, and skill, and he was the owner of, and entitled to a large share of, the profits thereof; that the said Develin, who was the ostensible proprietor, had no agency in the keeping of the hotel, except that he held in his own name a lease of the same, running until 1870; that Develin had not kept the hotel or performed any of the duties of a hotel keeper, but the hotel had been, since 1860, kept by the bankrupt, who was entitled, in consideration of his ability in the art and mystery of hotel keeping, to the profits thereof, Develin being entitled to only such ratable compensation as the taking of the lease was worth; that a portion of the profits of the establishment had been invested in a house at Lynn, Massachusetts, which in fact belonged to the bankrupt, although he gave out that it was given by Develin to his, the bankrupt's, wife; and that the profits of the Astor House, since 1860, were the property of the bankrupt, and were not mentioned in his schedules.

In regard to notice to the creditor, the papers show, that notices of the issuing of the warrant and of the first meeting of creditors were duly published, and that a like notice, containing the name of Mr. Harvier, as a creditor, and a statement of his residence and of the amount of his debt, and the other matter required, was duly served by mail on Mr. Harvier. If he did not receive it, that fact cannot affect the regularity of the proceeding. But it is quite clear, on the evidence of Mr. Harvier, that he attended the first meeting of the creditors of the bankrupt. That meeting was held on the 13th of November, 1867, and was adjourned until the next day, when an assignee was appointed. The petition for discharge was filed on the 24th of December, 1867. The order to show cause against the discharge was returnable on the 21st of January, 1868. On that day Macy & Jenkins, creditors, appeared, and gave notice of opposition to the discharge. On the 27th of January, a summons to the bankrupt to attend and be examined on the 28th, was issued by the register, on the application of Macy & Jenkins. On the 28th, the bankrupt was examined by the attorney for Macy & Jenkins, and his deposition shows, that he was enquired of respecting the matters now raised in regard to his connection with the Astor House since 1860, and in regard to the house at Lynn, and that he testified regarding those matters. As the result, no specifications were filed by Macy & Jenkins. Mr. Harvier, on the 28th, obtained from the office of the clerk of the supreme court of the state of New York, in the city of New York, a certified transcript of the docket of a judgment recovered by him in 1860 against the bankrupt and another person, and, on the 29th, deposed before a register, not the one to whom this case was referred, to a proof of his debt, to which such certified transcript was annexed. Whether such proof was presented to the register in charge of this case, does not appear. It was filed with the clerk of this court on the 17th of February, 1868. The papers show, that thirteen creditors had proved their debts, and that they were served with notices of the hearing on the application for discharge. The register's final certificate was made on the 1st of February, and the discharge was granted on the 3d. These facts are alluded to as indicating that the matter of the relations of the bankrupt to the Astor House, subsequently to 1860, and of the status of the house at Lynn, were made a subject of inquiry by creditors, with reference to a discharge, and that none of those who had proved their debts deemed the facts to be such as to warrant the filing of specifications in opposition to a discharge.

On the merits, I think that the creditor fails altogether, on the proofs now taken, in establishing that the bankrupt had, after 1860, any interest in the profits of the Astor House, or that any part of the same was held in trust for him by Mr. Develin, or that the house at Lynn belonged to him, or was purchased with his money. It is quite clear, on the evidence, that the bankrupt was not, at any time after 1860, the proprietor of the Astor House, or a partner with Mr. Develin, or the proprietor of the establishment, or entitled to any share of its profits. Mr. Develin was the real as well as the ostensible proprietor and keeper of the hotel. He paid to the bankrupt a salary, for certain services rendered at the hotel, and allowed him to reside there. Being the son-in-law of the bankrupt, and residing himself with his family at the hotel, during a part of each year, he permitted the bankrupt's wife, and three unmarried daughters of her and of the bankrupt, to reside at the hotel, and also furnished them with money, out of his own means, towards their support. This, he testifies, was regarded as part of the bankrupt's compensation. Whatever sum it amounted to was expended and used. In addition, Mr. Develin, as was not unnatural from his relationship to the bankrupt's wife and daughters, invested some money for the benefit of the bankrupt's wife and her daughters, the income to go to the wife during her life, and the principal to the daughters at her decease, the whole being put in trust. This money was his own, and was a free gift by him. So, also, the money invested in the house at Lynn, which is held in trust for the bankrupt's wife and her daughters, is not shown to have been the money of the bankrupt.

Instead of three debts in favor of Mr. Develin, but two were proved, and they are shown to have been valid and subsisting debts, and not at all fictitious.

The objections to the discharge fail, and it must stand, and the petition of the creditor be dismissed, with costs.